## DEPARTMENT OF TRANSPORTATION, Petitioner

### v.

### Earle DRACK, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 10, 2011.

Filed March 27, 2012.

---

Stephen F.J. Martin, Assistant Counsel and Jeffrey M. Spotts, Assistant Counsel, Harrisburg, for petitioner.

Earle Drack, pro se.

Audrey Buglione, Appeals Officer, Harrisburg, for amicus curiae Office of Open Records.

BEFORE: LEADBETTER, President Judge [1], and BROBSON, Judge, and McCULLOUGH, Judge.

1. This case was assigned to the opinion writer on or before January 6, 2012, when President

OPINION BY Judge BROBSON.

Petitioner Department of Transportation (DOT) petitions for review of an order of the Pennsylvania Office of Open Records (OOR).[2] OOR's order granted the appeal of Earle Drack (Drack), in part, and dismissed the remainder of his appeal as moot. Drack sought review of DOT's response to his request for records relating to a speed control device referred to as ENRADD EJU–91 (ENRADD). Specifically, OOR's order directed DOT to provide Drack with access to unredacted documents, which DOT had previously provided to Drack in redacted format. We affirm.

The procedural history is significant to the resolution of this matter, and we summarize that history below. In a letter DOT received on January 3, 2011, Drack requested, under the Right–to–Know–Law (RTKL):[3] (1) copies of all DOT correspondence regarding ENRADD; (2) copies of all versions of calibration procedure used for ENRADD; and (3) copies of all versions of operator's and/or training manuals for ENRADD. (Reproduced Record (R.R.) at 10a.)

DOT responded to Drack's request by letter dated January 10, 2011. (R.R. at 12a.) In that letter, DOT informed Drack that it was exercising its right under Section 902(a)(4) of the RTKL[4] to take an additional thirty (30) days (until February 9, 2011) to respond to Drack's request "in order to make a legal determination whether the documents requested are subject to access under the RTKL." (Id.) DOT mailed a letter to Drack on February 9, 2011. (R.R. at 14a.) In that letter, DOT states that, based upon its election to use the RTKL's thirty-day extension, its "*final* response is due ... on or before February 9, 2011" and, that "[t]his response is provided pursuant to that requirement." (Id. (emphasis added).) The letter inconsistently provides, however:

This is an *interim* response to indicate that your request will be granted, insofar as it covers public records under the RTKL that are described with sufficient specificity. *We reserve the right,* in our *final* response, *to assert any exceptions to production under the RTKL,* such ... as but not limited to, 65 P.S. §§ 67.708(b)(3)(i) and 65 P.S. §§ 67.708(b)(4).

However, our records show that you owe money in the total amount of $16.38, relating to two other requests to [DOT].... Pursuant to Section 901 of the RTKL and our agency RTKL Policy ... this amount must be paid before we can process your RTKL request to this agency.

. . .

Once payment is received [DOT] will process your request further and will proceed to: 1) make a final determination as to what records, if any, are public records under the RTKL; 2) begin search and retrieval of those records; 3) perform any required redaction; and 4) advise you as to a date by when the records will be produced.

If full payment is not received for your prior RTKL requests to [DOT] by March 3, 2011, we will consider the request to be withdrawn for lack of payment. Further, nothing in this letter

---

Judge Leadbetter completed her term as President Judge.

**2.** The order in question is OOR's Amended Final Determination on Reconsideration, dated May 10, 2011.

**3.** Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–.3104.

**4.** 65 P.S. § 67.902(a)(4).

shall be construed as a waiver of any available exceptions under the RTKL. (*Id.* (emphasis added).) The letter also advised Drack that he had a right to appeal DOT's response to OOR, and that, in such an appeal, Drack would be required *to offer reasons to OOR* why he believed DOT was wrong to require pre-payment. (R.R. at 22a.)

On February 22, 2011, Drack appealed DOT's February 9, 2011 response to OOR. (R.R. at 16a–22a.) In his appeal, Drack noted that the only reason DOT provided in its January 10, 2011 response for exercising its right to a thirty (30)-day extension under Section 902(a)(4) of the RTKL, was to enable DOT to make a legal determination as to whether the requested records were subject to access under the RTKL. (R.R. at 17a.) Drack noted that DOT inconsistently characterized its February 9, 2011 letter as both an interim and final response to his request. (*Id.*) Drack asserted that DOT had misinterpreted the RTKL:

> If [DOT] wished to delay processing my request until the $16.38 was paid, the time to say that was in the initial response within 5 days as described clearly in Section 902(a)(6) and 902(b). The law has no provision for "re-starting the clock" AFTER the 5–day and 30–day intervals, which is what [DOT] appears to be trying to do. Since [DOT] did not raise the issue of the outstanding $16.38 in their initial response, as required by law if that issue is to be raised in regard to the instant request, then it cannot be raised after the 30–day final response period has been exhausted.

(*Id.* at 17a–18a (emphasis in original).) Based upon this reasoning, Drack argued that OOR should regard DOT's February 9, 2011 response as a deemed denial based upon untimeliness because DOT did not address his request on the merits in that

letter. (R.R. at 18a.) Based upon DOT's inaction, Drack contended, OOR should direct DOT to produce the requested records. (*Id.*)

In accordance with OOR's appeal procedures, OOR sent a form letter to Drack and DOT on February 22, 2011, advising the parties that the record in the appeal would be closed in seven days and advising DOT that it must provide a factual and legal basis for its denial of Drack's request. (R.R. at 24a.) Additionally, the form letter advised that "any exceptions not raised in the agency's original response to the request are waived. *See Signature Information Solutions, LLC v. Aston Township*, 995 A.2d 510 (Pa. Cmwlth.2010). New grounds raised in the appeal will not be considered." (*Id.*)

In its submission to OOR, DOT relied upon its view that, because Drack had an outstanding balance on previous RTKL productions from DOT, Section 901 of the RTKL did not impose upon DOT a requirement to review and produce in response to Drack's request until Drack paid for his previous requests. DOT asserted that its approach fully complied with the RTKL and that, once Drack paid his balance for the previous requests, during the pendency of this appeal before OOR, DOT timely provided Drack with redacted records in response to his request. DOT indicated that when it produced the required records, it redacted some of the records based on its belief that the records were protected by the attorney-client privilege.

In its initial decision, entitled "Amended Final Determination," the Appeal Officer reasoned that, although Section 901 of the RTKL provides an agency with the authority to refuse to provide a requester with access to requested documents until the requester pays for the records produced, pursuant to Section 1307(h) of the

RTKL, an agency may not "refuse to process a request or identify grounds for withholding records prior to payment of fees unless the copy fees exceed $100." (R.R. at 66a.) The Appeal Officer noted that, although DOT did not provide a substantive ground for providing redacted records to Drack in its February 9, 2011 response, DOT offered the attorney-client privilege as a substantive ground during the course of the appeal. The Appeal Officer, however, concluded that DOT failed to provide an evidentiary and/or legal basis in support of its claim relating to the attorney-client privilege. Thus, the Appeal Officer concluded that DOT was required to provide Drack with unredacted copies of the records it produced in response to Drack's request.

DOT filed a petition for reconsideration with OOR, raising several issues: (1) whether OOR improperly addressed issues in its consideration of Drack's appeal that Drack did not raise and which Drack should have raised in an appeal from DOT's later substantive response to Drack's request; (2) whether OOR erred in its application of the law regarding the attorney-client privilege; (3) whether OOR erred in concluding that the RTKL's prepayment provision does not apply to forestall a response to a current record request based upon a requester's unpaid balance to the agency; and (4) whether OOR erred by failing to conclude that Drack's appeal is moot, based upon DOT's intervening response to Drack (while Drack's appeal was pending before OOR).

OOR granted DOT's request for reconsideration.[5] The Appeal Officer who issued OOR's Determination on Reconsideration rejected DOT's characterization of its February 9, 2011 response as an "interim" response. The Appeal Officer referenced Section 902(b)(2) of the RTKL, which provides that, when an agency opts to defer a final response under Section 902 of the RTKL, the RTKL deems the agency to have denied the request if an agency issues a final response beyond the thirty-day period. Thereafter, a requester may appeal a denial or a deemed denial to OOR within fifteen days. Section 1101(a)(1) of the RTKL, 65 P.S. § 67.1101(a)(1). The Appeal Officer viewed the language of DOT's February 9, 2011 letter as a denial because it effectively *denied access* to the records Drack requested. The Appeal Officer also referred to evidence, indicating that DOT had reviewed and compiled the requested records before it issued its February 9, 2011 response, and could have, but did not, allege that aspects of the requested records were protected by the attorney-client privilege.

Finally, the Appeal Officer concluded that because DOT's letter, dated February 9, 2011, raised only the payment issue as a reason for not granting access to the records and failed to raise the attorney-client issue, DOT was precluded from raising the issue in its appeal before OOR. Based upon this reasoning, the Appeal Officer concluded that the Appeal Officer who issued OOR's initial decision erred in considering the merits of DOT's attorney-client privilege argument. Ultimately, the Appeal Officer directed DOT to respond to Drack's request to the extent that it had failed to provide access to the requested records. In other words, the Appeal Officer directed DOT to provide the requested documents without redaction.

**5.** Additionally, Drack requested reconsideration, but OOR quashed his request as untimely.

DOT now petitions for review,[6] raising the following issues: (1) whether Section 901 of the RTKL permits an agency to provide an interim, rather than final, response to a requester when the requester has not paid for the costs of a previous request; (2) whether OOR addressed matters in its Final Determination that Drack did not raise in his appeal from DOT's February 9, 2011 response; (3) whether OOR erred in concluding that DOT was required to raise all exemptions and/or exceptions in its February 9, 2011 response to Drack's request where Drack had not, at that time, paid for the costs of his past requests; (4) whether Drack's appeal became moot when, after he filed his appeal, he paid DOT the money he owed for his past requests and DOT provided Drack with the records he requested (with parts redacted based upon DOT's claim of attorney-client privilege); and (5) whether records protected by a privilege retain that privilege, if not waived by an agency, and thus are not subject to release because they are not public records under Section 305 of the RTKL.

We begin with DOT's argument that Section 901 of the RTKL authorizes an agency to require payment of fees that a requester owes the agency for the agency's fulfillment of previous RTKL requests. To aid our discussion, we quote pertinent provisions of the RTKL. Section 901 of the RTKL provides, in pertinent part:

General rule

Upon receipt of a written request for access to a record, an agency shall make a good faith effort to determine if the record requested is a public record, legislative record or financial record and whether the agency has possession, custody or control of the identified record, and to respond as promptly as possible under the circumstances existing at the time of the request. *All applicable fees shall be paid in order to receive access to the record requested.* The time for response shall not exceed five business days from the date the written request is received by the open records officer for an agency. If the agency fails to send the response within five business days of receipt of the written request for access, the written request for access shall be deemed denied.

(Emphasis added.)

Section 902 of the RTKL is also pertinent to DOT's argument, and provides:

Extension of time

(a) Determination.—*Upon receipt of a written request for access, the open-records officer for an agency shall determine if one of the following applies:*

(1) The request for access requires redaction of a record in accordance with section 706;

. . .

---

6. "The scope of review for a question of law under the [RTKL] is plenary." *Stein v. Plymouth Twp.*, 994 A.2d 1179, 1181 n. 4 (Pa. Cmwlth.2010). In *Bowling v. Office of Open Records*, 990 A.2d 813 (Pa.Cmwlth.2010) (en banc), *appeal granted*, 609 Pa. 265, 15 A.3d 427 (2011), we concluded that our standard of review under the RTKL is as follows: "[A] reviewing court, in its appellate jurisdiction, independently reviews the [OOR's] orders and may substitute its own findings of fact for that of the agency." *Id.* at 818. Further, "a court reviewing an appeal from a [decision of an OOR] hearing officer is entitled to the broadest scope of review." *Id.* at 820. Under this broad standard, we review "the record on appeal," which includes "the request for public records, the agency's response, the appeal, the hearing transcript ... and the final written determination of the appeals officer." *Id.* at 820. Additionally, this Court may review other material, including party stipulations, and also may conduct an *in camera* review of the documents at issue. *Id.* at 820–23. Finally, we may supplement the record by conducting a hearing or direct such supplementation by remanding the matter to OOR. *Id.* at 823 n. 11.

(4) A legal review is necessary to determine whether the record is a record subject to access under this act;

. . .

(6) The requester *refuses* to pay applicable fees authorized by this act;

. . .

(b) Notice.—

(1) Upon a determination that one of the factors listed in subsection (a) applies, the open-records officer shall send written notice to the requester within five business days of receipt of the request for access under subsection (a).

(2) The notice shall include a statement notifying the requester that the request for access is being reviewed, the reason for the review, a reasonable date that a response is expected to be provided and an estimate of applicable fees owed when the record becomes available. If the date that a response is expected to be provided is in excess of 30 days, following the five business days allowed for in section 901, the request for access shall be deemed denied unless the requester has agreed in writing to an extension to the date specified in the notice.

(3) If the requester agrees to the extension, the request shall be deemed denied on the day following the date specified in the notice if the agency has not provided a response by that date.

(Emphasis added.)

Section 903 of the RTKL provides

[i]f an agency's response is a denial of a written request for access, whether in whole or in part, the denial shall be issued in writing and shall include: (1) A description of the record requested. (2) The specific reasons for the denial, including a citation of supporting legal authority. (3). . . . (4) Date of the response. (5) The procedure to appeal the denial of access under this act.

Finally, Section 1307(h) of the RTKL, which relates to "prepayment," provides that "[p]rior to granting a request for access in accordance with this act, an agency may require a requester to prepay an estimate of the fees authorized under this section if the fees required to fulfill the request are expected to exceed $100."

 DOT first contends that Section 901 of the RTKL only requires an agency seeking to exercise its right to a thirty-day extension of time to identify one reason for requesting an extension. DOT argues that the Court must read Sections 901 and 902 of the RTKL together, and that, because Section 901 of the RTKL requires an agency to identify only one of the reasons listed in Section 902 of the RTKL for employing the thirty-day extension provision, an agency is not required to identify every reason why it is using the extension. Thus, in this case, DOT contends that it could properly identify the "legal determination" reason in Section 902(a)(4) of the RTKL without mentioning its claim of past due amounts as an additional reason for invoking the extension provision.

While the rules of statutory construction, if applicable, do instruct courts to interpret provisions *in pari materia,*[7] DOT overlooks the fact that Section 903 of the RTKL also provides insight into the meaning of Section 902 of the RTKL. Section 902(b) of the RTKL requires an agency to provide a *final* response to a requester within thirty days, unless a requester provides written agreement granting an agency a further extension. Section 903 of the

**7.** 1 Pa.C.S. § 1932.

RTKL provides that an agency response denying a request in whole or in part must provide the "specific reasons" (emphasis added) for the denial.

DOT contends, however, that because Section 901 of the RTKL provides that "all applicable fees shall be paid in order to receive access to the record requested," DOT is permitted to provide a response that was not "final" as anticipated by Section 902 and 903 of the RTKL.

While Section 1307(h) of the RTKL may support an agency's delay in processing a request when an agency anticipates fees exceeding $100, the RTKL otherwise does not provide for a final response beyond the thirty-day response period. There simply is no statutory support for DOT's assertion that a requester's failure to pay for costs to an agency for the fulfillment of a past request authorizes a final response after the extended thirty-day period. Section 903 of the RTKL is clear that an agency must provide in its final response the reason or reasons why it is denying a request. Although DOT is correct in stating that Section 901 only requires an agency to provide one reason why it is seeking an extension beyond the five-day period provided in Section 901 of the RTKL, once an agency exercises its right under Section 902 of the RTKL, it must provide a *final* response within the thirty-day period, and that final response, under Section 903 of the RTKL, must identify all reasons why an agency is denying access to all or part of the requested records.

DOT asserts that an agency has the right to condition its *final response* on the payment of fees. In making this argument, DOT relies upon this Court's decision in *Indiana University of Pennsylvania v. Loomis,* 23 A.3d 1126 (Pa.Cmwlth. 2011) (*Loomis*). *Loomis* is distinguishable from this case. In *Loomis,* the university collected requested records that were in the possession of a third-party. The university redacted certain information in the records based on various exemption provisions of the RTKL. Apparently, at the time the university provided a final response to the requester, including citations to the provisions of the RTKL upon which the university relied in redacting the records, the University also asked for a check to pay for the copy fees at the time the requester received the documents. The requester did not pay for the documents or attempt to pick up the documents, but, rather, filed an appeal from the university's response arguing that the university erred in redacting information in the records. OOR proceeded to address on appeal the merits and concluded that some of the redactions were correct, but it directed the university to provide other redacted information. The university appealed to this Court, which rejected the requester's claim that the university had waived the issue of whether his failure to pre-pay for the records precluded consideration of the merits of his appeal by OOR. Relying upon our decision in *Prison Legal News v. Office of Open Records,* 992 A.2d 942, 946 (Pa.Cmwlth.2010), we concluded that an agency may withhold *access* to requested records if a requester does not pay the pre-payment fee in full.[8]

8. In *Loomis,* we referred to Section 506(d)(3) of the RTKL for this proposition, apparently because *Loomis* arose in the context of records in the possession of third parties. The reference to the right of an agency to withhold access appears to have been first mentioned in *Prison Legal News,* where we stated that, a refusal to provide access based upon a failure of a requester to pre-pay constitutes a denial because the agency has placed a condition precedent (pre-payment) on access to records. The Court reasoned that, as with all denials, Section 903 of the RTKL requires an agency to provide a reason for denial. Citing Section 903 of the RTKL, we stated that when a "requester does not pay [such a] fee in full,

Neither *Loomis* nor *Prison Legal News* support the proposition that an agency's response under Section 903 of the RTKL that includes a demand for pre-payment permits an agency to defer identification of the other substantive grounds upon which an agency proposes to deny a requester access to requested records.

DOT also argues that, while the clear purpose of Section 1307(h) of the RTKL is to spare an agency from needlessly expending agency resources on a request that is likely to cost more than $100 by ensuring that a requester is willing to pay such costs, the Court should similarly view Section 901 of the RTKL as a measure that the General Assembly adopted in order to enable agencies to obtain from a requester the costs associated with previous requests for which the requester has not paid the agency. Presumably, however, the General Assembly regarded a certain threshold amount to be significant when it adopted Section 1307(h)—$100. In a situation where a requester owes money for an agency's fulfillment of an earlier request, and where the amount owed for a current request is not expected to exceed $100, Section 901 permits an agency to process the request but to withhold *access* to the request until all applicable fees, including fees for earlier requests, are paid.

DOT, however, relies upon two OOR final determinations in which OOR concluded that, under Section 901 of the RTKL, an agency bears no burden to proceed to *process* a request if a requester

has an outstanding balance due for previous RTKL requests. In *Donahue v. Luzerne Schuylkill County Workforce Investment Board*, (Office of Open Records No. AP 2011–0511, 2011 WL 2628554, filed May 26, 2011), however, the agency advised the requester within two days of receiving the request that it would not *process* the request because of an outstanding balance.[9] In this case, DOT's initial response under Section 902 identified only the need to determine whether the records Drack sought were subject to release under the RTKL. DOT's initial letter, unlike the agency in *Donahue*, nowhere suggested that DOT would not proceed to process Drack's request until he paid for his previous requests. Moreover, these decisions are not binding on this Court. *State Farm Mut. Auto. Ins. Co. v. Dep't of Ins.*, 720 A.2d 1071, 1074 n. 5 (Pa.Cmwlth.1998) ("It is well settled that administrative decisions have no precedential value before this Court.")

In this case, while Drack's failure to pay for the costs that DOT incurred for a past request or requests [10] may have provided DOT with (1) a reason either to refuse to process Drack's request or to deny access to records otherwise available within five days until Drack paid for his DOT's earlier RTKL requests (under Section 901 of the RTKL) or (2) to exercise its right under Section 902(a)(6) to a thirty-day extension to respond finally to Drack's RTKL request, Drack's past due payment to DOT did not provide DOT with the power to issue an "interim" final response. As stat-

---

the agency may withhold access." *Prison Legal News*, 992 A.2d at 946.

9. Similarly, in *Mezzacappa v. Borough of West Easton*, (Office of Open Records No. AP 2011–0833, 2011 WL 2783054, filed July 11, 2011), the agency responded to the requester's request within three days of receiving the request.

10. We note here that Section 902(a)(6) is phrased in terms of *refusal* to pay. No party appears to raise the question of whether a failure to pay constitutes a refusal to pay under the RTKL.

ed above, Section 903 of the RTKL requires an agency to indicate all of the reasons why it is denying access to all or part of the records requested.

Although OOR interprets Section 901 of the RTKL to provide authority for an agency to refuse to *process* a request,[11] which interpretation this Court has not considered in this or other appeals, Sections 902 and 903 of the RTKL clearly anticipate that an agency must provide a final response within thirty days where it exercises its right under Section 902 of the RTKL, and Section 903 of the RTKL requires an agency to identify all reasons why it is denying in whole or in part a RTKL request. Considering the clear mandate contained in the RTKL, we must disagree with DOT that it was not required to provide a final response identifying all reasons for denying Drack's request.[12]

■■■ DOT also contends that OOR erred by considering matters other than Drack's claim in his appeal that DOT could not raise the payment issue in a final response. In his appeal, Drack did argue that DOT was required to raise the non-payment issue in its initial letter, and that DOT, therefore, was precluded from raising the issue in its February 9, 2011 "final response" letter. Drack, however, also requested OOR to regard DOT's response as a deemed denial rather than a final response as required by the RTKL. Based upon his view of DOT's action as one that did not comply with the requirement for DOT to respond within thirty (30) days, Drack asked OOR to direct DOT to make the records available.

In this light, we view Drack's appeal as raising not only a challenge to DOT's failure to raise the non-payment issue in its initial response, but also as raising the general issue of whether DOT failed to comply with the requirement of Section 902 of the RTKL that an agency, which elects to exercise a right under that section for a thirty (30)-day extension, must provide a *final* response (that substantively complies with Section 903 of the RTKL) within that thirty (30)-day period. Consequently, we reject DOT's argument that OOR exceeded the scope of Drack's appeal.

■■■ DOT also claims that records that are protected by a privilege remain privileged unless an agency waives the privilege. Section 102 of the RTKL defines the term "public record" as a "record" of a Commonwealth agency that "is not protected by a privilege." The RTKL creates a presumption that records are public records. Section 305 of the RTKL, 65 P.S. § 67.305. Section 305 of the RTKL, however, excludes from this presumption records that are protected by a privilege. Although such records may be excluded, Section 708(a) of the RTKL provides that "[t]he burden of proving that a record of a Commonwealth agency . . . is exempt from public access" is upon the Commonwealth agency. An agency seeking to claim this exclusion bears the burden to prove the exclusion by a preponderance of the evidence. *Id.* § 708(a); *County of York v. Office of Open Records,* 13 A.3d 594, 597–98 (Pa.Cmwlth.2011). Thus, the RTKL places an evidentiary burden upon agencies seeking to deny access to records even when a privilege is involved.

11. We note that OOR's brief is equivocal on this question, suggesting that OOR itself does not fully stand behind these decisions.

12. As the Court reasoned in *Prison Legal News,* when an agency makes access conditional on payment, the response is still a denial. *Prison Legal News,* 992 A.2d at 946.

Nevertheless, DOT relies upon this Court's decision in *Board of Supervisors of Milford Township v. McGogney*, 13 A.3d 569 (Pa.Cmwlth.2011), in arguing that an agency's open records officer cannot waive the attorney-client privilege belonging to one of its employees. In *McGogney*, a case arising as an appeal from a trial court's decision, the Court considered whether an open records officer's release of records that contained privileged communications was inadvertent such that the governmental agency was entitled to an injunction directing the requester to return the records that the open records officer had released to the requester. This Court applied a standard adopted by the Superior Court in considering when an inadvertent release of information protected by the attorney-client privilege results in a waiver of the privilege. *McGogney*, 13 A.3d at 572–73 (citing *Carbis Walker, LLP v. Hill, Barth & King, LLC*, 930 A.2d 573 (Pa.Super.2007)). We concluded that the precautions that the governmental unit's solicitor took in directing the open records officer not to release the records and the prompt actions the agency took to try to obtain the return of the records supported the ultimate conclusion that the agency did not waive the privilege. The Court also rejected the requester's argument that the open records officer acted within the scope of her duties and had the authority in her position to waive the privilege, thereby binding the governmental unit. The Court opined that an open records officer's duties "are ministerial and administrative in nature." *McGogney*, 13 A.3d at 573. We concluded that the open

records officer exceeded her role by disregarding the agency's solicitor's direction not to release the records. We observed that the attorney-client privilege belongs to the client and that the Board of Supervisors was the client. In such a case, "waiver of the attorney-client privilege is a legal and policy question for the Board and its solicitor to decide . . . and [the requester did] not [demonstrate] that [the open records officer] possessed the actual authority to perform such an act." *Id.* at 574.

*McGogney* is factually distinguishable from this case, where DOT's open records officer did not inadvertently release confidential records. Rather, here DOT had the opportunity to raise the issue when it issued its February 9, 2011 final response. As indicated above, DOT initially indicated in its January 10, 2011 letter to Drack that it was taking advantage of the thirty-day extension in order to make a legal determination as to whether the records were subject to access under the RTKL. Thus, DOT could have investigated the privilege issue during that time period, but it did not raise the privilege in its February 9, 2011 response. As the Appeal Officer noted in the Final Determination, this Court concluded in *Signature Information Solutions* that the RTKL does not permit an appeal officer to consider reasons raised for the first time in an appeal to OOR, when an agency has not identified the reason in its final response to a requester. We conclude, therefore, that the Appeal Officer did not err in reaching this conclusion.[13]

---

**13.** In its brief, DOT suggests that our holding in *Signature Information Solutions* must have limits. Specifically, DOT posits that if a particular record is privileged or otherwise protected from disclosure as a matter state or federal law (other than the RTKL), judicial order or decree, or a privilege, the failure of

an agency to raise the particular protection in its denial letter cannot serve as a ground to override the protected legal status of the record and force its production under the RTKL. In support, DOT directs us to Section 506(c) of the RTKL, 65 P.S. § 67.506(c). This section authorizes an agency, in its discretion,

Finally, DOT argues that, once it provided Drack with the records that he requested, albeit, records that included redactions, the matter became moot. For the reasons we expressed above regarding DOT's waiver of the attorney-client privilege based upon its failure to raise the issue in its February 9, 2011 final response, we conclude that the issue did not become moot.

Accordingly, we affirm OOR's order directing DOT to provide Drack with the records he requested without redactions.

### ORDER

AND NOW, this 27th day of March, 2012, the order of the Office of Open Records is AFFIRMED.

"to make any otherwise exempt record accessible for inspection and copying" unless, *inter alia,* disclosure is prohibited by federal or state law, judicial order or decree, or the record is protected by a privilege.

Though DOT's point is intriguing, the facts of this case do not compel us to examine it further. The privilege at issue in this case is communications between attorney and client. The privilege is not absolute; rather, it may be waived. *See Joyner v. Se. Pennsylvania Transp. Auth.,* 736 A.2d 35 (Pa.Cmwlth.1999). Thus, our decision in *Signature Information Solutions* applies. Because we are not here presented with facts similar to those in *McGogney,* DOT's failure to raise the attorney/client privilege in its February 9, 2011 response constituted a waiver of that privilege as a basis for refusing to produce the unredacted records under the RTKL.